**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRIUMPH PACKAGING GROUP, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  11 C 7927 |
| v. | ) ) | |
| SCOTT WARD, VITAL-X ASSOCIATES, LLC, an Illinois limited liability corporation, CREATIVE DESIGN PRODUCTS, INC., JOHN DOES, JANE DOES AND ABC COMPANIES, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| SCOTT WARD, | ) ) | |
| Counter-claimant and Third Party Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| TCG PACKAGING SERVICES, LLC d/b/a/ TRIUMPH PACKAGING GROUP, RANDALL CECOLA, DTG SERVICES GROUP, INC., KALLAHAN MARKETING GROUP, INC., DARWIN TECHNOLOGY, TESORO REALTY GROUP LLC, and JOHN DOES, JANE DOES, and ABC COMPANIES, | ) ) ) ) ) ) ) ) ) ) | |
| Counterclaim and Third Party Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff/Counter-Defendant Triumph Packaging Group ("Triumph") and Third-Party

Defendants Randall Cecola ("Cecola"), DTG Services Group, Inc. ("DTG"), Kallahan Marketing

Group, Inc. ("KMG"), Darwin Technology ("Darwin"), and Tesoro Realty Group LLC ("Tesoro

Realty") (collectively, the "Third-Party Defendants") move to dismiss Defendant/Counter-

Plaintiff Scott Ward's ("Ward") First Amended Counterclaim and Third Party Complaint

pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  For the following

reasons, the Court grants the motion to dismiss as to Counts II, III, IV, and V and denies it as to

Counts I, VI and VII.

## PROCEDURAL BACKGROUND[1]

On November 8, 2011, Triumph filed a seven-count Complaint against Scott Ward, Vital-

X Associates, LLC, Creative Design Products, Inc., John Does, Jane Does, and ABC Companies.

(R. 1, Compl.)  Ward answered the Complaint on January 4, 2012 and filed a Counterclaim and

Third-Party Complaint (the "Initial Counterclaim") alleging claims individually and derivatively

on behalf of Triumph.  (R. 63.)   On July 10, 2012, the Court dismissed Ward's derivative claims

with prejudice and all of his individual claims, except one, without prejudice.  (R. 94.)  Ward

filed a seven-count First Amended Counterclaim and Third-Party Complaint ("Amended

Counterclaim") in his individual capacity on July 27, 2012.  (R. 96.)  On August 21, 2012,

Triumph and the Third-Party Defendants (collectively, the "Counter-Defendants") moved to

dismiss the Amended Counterclaim.  (R. 102.)

---

[1] The Court's July 10, 2012 Memorandum Opinion and Order ("Previous Opinion")
contains a more detailed discussion of the procedural history. *Triumph Packaging Grp. v. Ward*,
No. 11-cv-7927, 2012 WL 2815594, at *1 (N.D. Ill. July 10, 2012).

## FACTUAL BACKGROUND

In the Previous Opinion, the Court provided a detailed discussion of Ward's lengthy pleadings in the Initial Counterclaim.[2]  *See Triumph*, 2012 WL 2815594 at *1-3.  To the extent Ward's pleadings in the Amended Counterclaim differ from the Initial Counterclaim, the Court will address those differences in its Analysis below.

## LEGAL STANDARD

### I.  Rule 12(b)(1)

Standing to sue is a threshold jurisdictional requirement in every federal action.  *See Horne v. Flores*, 557 U.S. 433, 445, 129 S. Ct. 2579, 174 L. Ed. 2d 406 (2009).  Rule 12(b)(1) motions address standing issues, and federal courts "may not grant relief when standing does not exist."  *Heartland Direct, Inc. v. Chevron U.S.A. Inc.*, No. 06 C 1029, 2006 WL 2524139, at *2 (N.D. Ill. Aug. 30, 2006).  When considering a Rule 12(b)(1) motion challenging the factual basis for subject matter jurisdiction, district courts look beyond the pleadings and consider all competent evidence.  *Id.*; *Hay v. Indiana State Bd. of Tax Comm'rs.*, 312 F.3d 876, 879 (7th Cir. 2002).  "[T]he party asserting a right to a federal forum has the burden of proof, regardless of who raises the jurisdictional challenge."  *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008).

### II.  Rule 12(b)(6)

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a

---

[2] Ward's Initial Counterclaim consists of 385 enumerated paragraphs and Ward's Amended Counterclaim consists of 432 enumerated paragraphs.  Both pleadings "[c]ontain[] numerous alleged facts that are immaterial and irrelevant to his asserted claims."  *Triumph*, 2012 WL 2815594 at *1, n. 2.

claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A plaintiff may plead himself out of court by alleging facts showing that he has no legal claim. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 600 (7th Cir. 2012); *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

## ANALYSIS

Ward's Amended Counterclaim contains seven counts: Count I - Fraudulent Inducement (against Triumph and Cecola); Count II - Violation of Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq* (against all Defendants); Count III - Breach of Fiduciary Duty (against Cecola); Count IV - Civil Conspiracy (against All

Defendants); Count V - Conversion (against All Defendants); Count VI - Unjust Enrichment

(against Third-Party Defendants); and Count VII - Unjust Enrichment (against Triumph).

Counter-Defendants move to dismiss all seven of these counts. Counter-Defendants argue that

Ward has not alleged a personal injury sufficient to bring Counts I, II, III, and IV and that Ward

has failed to state a claim in Counts II, IV, V, VI and VII.[3]

The Court will not consider Counter-Defendants' arguments regarding Count I,

fraudulent inducement, because the Court previously determined that the allegations in the Initial

Counterclaim, which Wards repeats in the Amended Counterclaim, were sufficient to state a

claim. *See Triumph*, 2012 WL 2815594 at *17; *see also* (R. 107, Resp. at 3 ("The First

Amended Counterclaim did not remove any allegations relative to the Fraudulent Inducement

claim.").) Specifically, the Court found that Ward's allegations that his reliance on Cecola's

false statements deprived him of an equal partnership provide a sufficient basis to infer, at this

stage, that he suffered damage as a result of his reliance on Cecola's false statements. *Id*. at *16.

The Court, therefore, denies Counter-Defendants' motion as to Count I.

Standing is a threshold requirement imposed by Article III of the Constitution which

limits federal subject matter jurisdiction to claims that present an actual case or controversy in

which a plaintiff has a "personal stake." *Salazar v. Buono*, 130 S. Ct. 1803, 1814, 176 L. Ed. 2d

634 (2010) ("To demonstrate standing, a plaintiff must have alleged such a personal stake in the

outcome of the controversy as to warrant his invocation of federal-court jurisdiction) (internal

---

[3] In the last sentence of the Reply, Counter-Defendants argue that the Court should dismiss the Third-Party Defendants. (R. 109, Reply at 13.) The Court will not consider this perfunctory, undeveloped argument. *See Hess v. Kanoski & Assoc.*, 668 F.3d 446, 455 (7th Cir. 2012) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (citation omitted).

quotations omitted). The Court thus begins its analysis with Counter-Defendants' motion to dismiss under Rule 12(b)(1).[4]

## I.    Whether Ward Has Alleged Sufficient Personal Injury to Individually Pursue Claims for RICO Violations, Civil Conspiracy and Breach of Fiduciary Duty

Counter-Defendants argue that the Court should dismiss Counts II, III and IV because Ward fails to allege any direct personal harm as opposed to harm to Triumph. (Defs.' Mem. at 3.) "Under Illinois law, an action for harm to the corporation must be brought in the corporate name as a derivative action unless an investor has suffered a distinct personal injury."[5] *Ching v. Porada*, 560 F. Supp. 2d 675, 678 (N.D. Ill. 2008) (internal quotations omitted); *see also Davis v. Dyson*, 387 Ill. App. 3d 676, 689-90, 326 Ill. Dec. 801, 900 N.E.2d 698 (Ill. App. Ct. 2008) ("for a shareholder to have standing to bring an individual claim, the shareholder must allege an injury that is 'separate and distinct from that suffered by other shareholders' or an injury that

---

[4] Counter-Defendants state that they move to dismiss all claims brought by Ward "pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." (R. 105, Defs.' Mem. at 1.) Counter-Defendants also assert, however, that the Court can treat a motion to dismiss based on lack of damages as a motion to dismiss under Rule 12(b)(6), while also arguing that the Court should dismiss Ward's RICO claim pursuant to Rule 12(b)(1) for lack of standing as it did in the Previous Opinion. (*Id.* at 2-3.) A court properly considers standing under Rule 12(b)(1) because standing is an issue of the court's subject matter jurisdiction. *See Am. Fed'n of Gov't Emps., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999) ("Obviously, if a plaintiff cannot establish standing to sue, relief from this court is not possible, and dismissal under 12(b)(1) is the appropriate disposition."). The Court addresses Counter-Defendants' arguments that Ward has not alleged direct personal injury under Rule 12(b)(1). (Defs.' Mem. at 3-6.)

[5] "Although federal law generally controls the question of standing, whether the shareholder's claims are derivative or direct for purposes of the shareholder standing rule is controlled by the law of the state of incorporation, in this case, Illinois." *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 762 (7th Cir. 2008) (citing *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006). In its previous opinion, the Court determined that Ward is not a shareholder and therefore cannot bring a derivative action. *See Triumph*, 2012 WL 2815594 at *7.

involves a contractual right that exists independently of any corporate right") (quoting *Caparos v. Morton*, 364 Ill. App. 3d 159, 167, 300 Ill. Dec. 884, 845 N. E. 2d 773 (Ill. App. Ct. 2006)). "Examples of distinct personal injuries include a shareholder who alleges that board members have refused to return stock pledged to secure a debt after the loan has been paid, or a shareholder-employee who contests his discharge from employment, or a unique contract between the shareholder and the company that was dishonored." *Id.*

Here, Ward alleges the following injuries: (1) he lost additional compensation and ownership interest that he would have received if Triumph reached certain EBITDA[6] benchmarks, which were not reached because Cecola and Third-Party Defendants diverted funds (Amend. Counter. ¶¶ 232-38); (2) he lost his share of the money that Counter-Defendants diverted from Triumph, which would have flown directly to him as one of two shareholders in the company (*Id.* ¶¶ 378, 389, 398); (3) he gave Triumph a $50,000 loan, for which he received no interest and on which he paid taxes because Cecola repaid him through payroll (*Id.* ¶¶ 203, 206-08); and (4) he paid $49,000 of tax liability, based on his position as a shareholder in the S Corporation, though he did not receive any corresponding income or benefit. (*Id.* ¶¶ 19-21, 319-22.) All of these alleged injuries are corporate harms that only indirectly injure Ward, and therefore cannot form the basis of individual RICO, civil conspiracy or breach of fiduciary duty claims.

With regards to harms (1) and (2), Ward alleges financial harm he suffered as a result of harm the company suffered, namely a loss of assets that Counter-Defendants allegedly diverted.

---

[6] EBITDA stands for earnings before interest, taxes, depreciation, and amortization. *See* Merriam-Webster Dictionary, *EBITDA*, http://www.merriam-webster.com/dictionary/ebitda (last visited October 23, 2012).

7

These are corporate harms, not personal harms sufficient to establish standing for a direct action.

As the court in *Freed v. JPMorgan Chase Bank, N.A.* explained:

> it is invariably true that what harms a corporation (or an LLC) harms its shareholders by decreasing the value of their interest in the firm. That does not change the fact that a direct action is unavailable where the harm is a general one inflicted upon the company, rather than directly on a specific stockholder or officer.

No. 12 C 1477, 2012 WL 3307091, at *4-5 (N.D. Ill. Aug. 13, 2012) (citing *Twohy v. First Nat'l Bank of Chi.,* 758 F.2d 1185, 1194 (7th Cir. 1985) ("Under general principles of United States corporate law, as well as under Illinois law, a stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation.").

In *Small v. Sussman*, for example, the court affirmed the dismissal of a direct shareholder suit for breach of fiduciary duty against a corporation and its principal shareholder who wasted corporate assets and diverted them to outside the business or to himself. 306 Ill. App. 3d 639, 643-44, 239 Ill. Dec. 366, 713 N.E.2d 1216 (Ill. App. Ct. 1999). In *Elmhurst Consulting, LLC v. Gibson*, the court dismissed an individual breach of fiduciary duty claim, finding that misappropriating corporate assets and usurping business opportunities are "classic examples of injuries done to the corporation" that the shareholder can only redress in a derivative action. 219 F.R.D. 125, 127 (N.D. Ill. 2003). Notably, the *Elmhurst* court stated in a footnote that the fact that the company at issue was a closely-held corporation did not alter the analysis or the result. *Id*. at 127 n. 2 (citations omitted); *see also Small*, 306 Ill. App. 3d. at 643 (rejecting an argument that an exception should be drawn in Illinois for minority shareholders in closely held corporations). Indeed, the Seventh Circuit in *Frank v. Hadesman & Frank, Inc.* declined to carve out a special rule for closely held corporations, even when there are only two investors and

8

one is the wrongdoer. 83 F.3d 158, 161-62 (7th Cir. 1996) (holding that a principal's claim that a fellow investor "hallowed out" the company could not be brought as a direct action).

Ward's reliance on *Halperin v. Halperin*, No. 10 CV 4104, 2012 WL 832786 (N.D. Ill. Mar. 8, 2012), is misplaced. In *Halperin*, the court allowed a shareholder of a closely-held corporation to bring suit against a co-shareholder for breach of fiduciary duty and violation of the Illinois Business Corporation Act. *Id*. at *4. The *Halperin* court based its analysis on a "close reading" of an Illinois Appellate Court[7] case from 1976, *Zokoch v. Spalding*, 36 Ill. App. 3d 654, 633, 344 N.E.2d 806 (Ill. App. Ct. 1976), and "[chose] not to follow the lead of the *Small* and *Elmhurst Consulting* cases." *Id*. at *4. As noted above, the Court finds *Small* and *Elmhurst* on point and persuasive, particularly in light of the Seventh Circuit's adoption of their holdings. *See In re Cheeks*, 467 B.R. 136, 148 (N.D. Ill. 2012) (finding that *Small*, "in light of its use in *Frank*, is the best predictor of what decision on [the issue of creating a special standing exception for closely-held corporations] would likely be made by the Illinois Supreme Court if the issue was presented there"). Ward, therefore, is not outside of the general rule that individuals cannot bring individual suits for corporate harms without a distinct, personal injury.[8]

Ward's status as a former shareholder also does not alter the analysis. *See Small*, 306 Ill. App. 3d at 645 (rejecting the argument that the court should allow a direct suit because he is a

---

[7] Although *Halperin* court refers to *Zokoch* as an Illinois Supreme Court decision, the Illinois Supreme Court has not decided this issue. *See Halperin*, 2012 WL 832786 at *3-4.

[8] The Court explained in the Previous Opinion, with respect to the RICO claim, that "Ward's performance bonus, which he incurred as an employee of Triumph, was, at most, an indirect result of the alleged injury to Triumph." *Triumph*, 2012 WL 2815594 at *10 (collecting cases holding that employees who suffer indirect injuries as a result of conduct aimed at the employer do not have standing under RICO). Ward has not pled any additional facts in the Amended Counterclaim that cure this fatal deficiency in his allegations.

former shareholder and the company had been sold, stating that such an argument "squarely conflicts with Illinois law"); *see also Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1025 (8th Cir. 2008) (finding the district court did not err in prohibiting former shareholder from bringing individual suit stating "several courts have held that a shareholder lacks standing to pursue derivative claims individually even where, as in this case, the shareholder could not have pursued a derivative action because he no longer held stock in the allegedly injured company or he was otherwise barred from bringing a derivative suit").

Ward's argument that he suffered "repeated individual and direct injury, from a tax perspective" fails as well. (R. 107, Resp. at 7.) Even taking as true Ward's allegations that the $49,000 tax liability was on income he never received, Ward alleges only an indirect injury that resulted from harm Counter-Defendants caused to Triumph's financial state by diverting funds that Ward should have received as a shareholder. As discussed above, Ward cannot assert a claim based on his failure to receive compensation because Counter-Defendants diverted company funds. Alternatively, Triumph directly caused the $49,000 tax harm by retaining funds it should have distributed to the shareholders or by not reimbursing Ward as promised. These harms can be addressed via Ward's unjust enrichment claims, not RICO or conspiracy charges involving the Third-Party Defendants. Ward's argument that he individually suffered damages by not receiving interest on the $50,000 loan he made to Triumph also fails because his Amended Counterclaim still "lacks any allegations that he was ever entitled to receive interest on the loan that he voluntarily made to Triumph." *Triumph*, 2012 WL 2815594 at *9. Ward, therefore, has not alleged any direct, personal harm that would establish standing for RICO, civil conspiracy, or breach of fiduciary duty claims. Because Ward lacks standing to assert these

10

claims, the Court need not address Counter-Defendants' arguments that Ward fails to sufficiently

state these claims. The Court dismisses Counts II, III and IV with prejudice.

## II.      Count V - Conversion

To state a claim for the common law tort of conversion under Illinois law, a plaintiff must

allege that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the

immediate possession of that property; (3) he has made a demand for possession; and (4)

Counter-Defendants wrongfully and without authorization assumed control, ownership, or

dominion over the property at issue. *See Loman v. Freeman*, 229 Ill.2d 104, 127, 321 Ill. Dec.

724, 890 N.E.2d 446 (Ill. 2008); *see also Van Diest Supply Co. v. Shelby County State Bank*, 425

F.3d 437, 439 (7th Cir. 2005).

The Court dismissed Ward's conversion claim in its Previous Opinion because Ward

failed to "allege that he, individually, has the right to any property–instead,  he alleges that

Triumph and the Third-Party Defendants unlawfully converted Triumph's property for their own

use." *Triumph*, 2012 WL 2815594 at *17.  Counter-Defendants argue that Ward still fails to

state a claim for conversion because in the Amended Counterclaim he only superficially alleges

any right to the property.  (Mot. to Dismiss at 13.)  Counter-Defendants further argue that Ward

lacked an "absolute and unconditional right" to immediate possession of the monies at issue,

which Counter-Defendants additionally argue are not sufficiently identifiable to support a

conversion claim. *Id*.  The Court agrees.

To establish that an individual has an absolute and conditional right to possess the

property, "[i]t must be shown that the money claimed, or its equivalent, *at all times* belonged to

the plaintiff and that the defendant converted it to his own use." *Horbach v. Kaczmarek*, 288

F.3d 969, 978 (7th Cir. 2002) (quoting *In re Thebus*, 108 Ill.2d 255, 91 Ill. Dec. 623, 483 N.E.2d

1258, 1261 (Ill. 1985)) (emphasis in original). In the Amended Counterclaim, Ward makes only

conclusory allegations that he had a right to the monies "contractually, and as one of the two

shareholders of Triumph." (Amend. Counter. ¶ 404.) Furthermore, in his Response, Ward does

not address Counter-Defendants' argument that he lacked "absolute and unconditional right" to

the monies at issue. (Resp. at 12-13.) Indeed, the "bonus compensation and additional shares"

Ward alleges were "removed" from him were never in his possession and only would have been

in his possession if Triumph had achieved certain EBIDTA results, which Triumph did not

achieve. (Amend. Counter. ¶¶ 232-36, 401-02.) The bonus and compensation funds did not

belong to Ward at all times because they were "conditional and attenuated, not absolute and

immediate." *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 791 (N.D. Ill. 2010) (concluding that the

plaintiff's alleged right to a non-discretionary bonus did not support a claim for conversion); *see

also Sanchez v. Haltz Const., Inc.*, No. 09 C 7531, 2012 WL 13514, at *7 (N.D. Ill. Jan. 4, 2012)

(dismissing conversion claim for lost wages because plaintiff was not entitled to money in

escrow account "at all times"); *TABFG, LLC. v. Pfeil*, No. 08 C 6979, 2009 WL 3617514, at *4

(N.D. Ill. Oct. 28, 2009) (finding that plaintiff did not have possession or legal title to funds

sought when right to money arose from terms of the parties' agreement which provided for

distribution of 50% of profits less certain expenses, fees and costs). Although Ward did amend

his claims to state that Counter-Defendants "removed *from Ward* monies and other property" and

"received and accepted transfers of *Ward's funds*" rather than *Triumph's* monies, other property

and funds, the Amended Counterclaim allegations do not support these new assertions. *Compare*

R. 63, Counter. ¶¶ 375-376 and Amend Counter. ¶¶ 401-402 (emphasis added).

12

Ward also fails to sufficiently identify the converted assets. "As a general rule, an action for conversion cannot be maintained when the action seeks the return of money." *Thompson v. Fajerstein*, No. 08 C 3240, 2008 WL 4279983, at \*6 (N.D. Ill. Sept. 17, 2008) (citing *In re Thebus*, 108 Ill.2d at 261). Money may form the basis of a conversion claim only "where the converted funds are capable of being described, identified, or segregated in a specific manner." *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280, 287, 346 Ill. App. 3d 996, 282 Ill. Dec. 305 (Ill. App. Ct. 2004); *see also Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (internal citations omitted) ("An asserted right to money normally will not support a claim for conversion. Only if the money at issue can be described as 'specific chattel'. . .."). Ward has not alleged a specific amount of money that Defendants converted. He also "cannot identify which specific fund to which defendant or even if any of those funds are still in defendants' possession, especially given defendants' purported attempts to conceal the nature of the funds." *Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 WL 1543709 (N.D. Ill. May 29, 2009). Ward's allegations are not sufficiently specific to fall within the exception to the general rule that money cannot form the basis of a claim for conversion.

Despite Ward's attempts to cure the defects in his Initial Counterclaim, he still fails to sufficiently state a claim of conversion. The Court, therefore, dismisses Count V with prejudice.

## III.  Counts VI and VII - Unjust Enrichment

"In Illinois, 'to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Clearly v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160 137 Ill. Dec. 19, 545 N.E.2d 672, 679 (Ill. 1989)). Additionally, a plaintiff may pursue a cause of action for unjust enrichment where the benefit was transferred to the defendant by a third party where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant. *HPI Health Care*, 131 Ill. 2d at 161. In Count VI, Ward alleges that the Third-Party Defendants removed monies and property from Ward and received and retained transfers of Ward's assets to Ward's detriment. (Amend. Counter. ¶¶ 416-18.) In Count VII, Ward alleges that Triumph was unjustly enriched because Triumph agreed to pay the tax liability Ward incurred from the 2011 tax audit of Triumph. (Amend. Counter. ¶¶ 423-27.)

Counter-Defendants argue that the Court must dismiss the unjust enrichment claims if the Court dismisses the other counts in the Amended Counterclaim. Counter-Defendants also argue that Ward cannot pursue his unjust enrichment claim because he has not pled that he has no adequate remedy at law. (Mot. to Dismiss at 14-15.) The Court finds both arguments flawed.

Counter-Defendants are correct that "[f]or a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." (*Id.* at 14 (citing *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010)).) Counter-Defendants also correctly note that the Court must dismiss a claim for unjust enrichment if the underlying claim upon which it is based is deficient. (Mot. to Dismiss at 14 (citing *Siegel*, 656 F. Supp. 2d at 834; *Trujilo v. Apple Computer, Inc.*, 581F. Supp. 2d 935, 941 (N.D. Ill. 2008)).)

14

Although the Court dismisses Counts II-IV for lack of standing, the Court has not concluded that any of these claims are deficient on the merits. *See Sherman v. Chiapetta,* No. 12 C 0953, 2012 WL 4793502, at *1 (N.D. Ill. Oct. 9, 2012) ("A motion to dismiss tests the sufficiency of the complaint, not its merits") (citing *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996)). In *Trujillo,* for example, the Court dismissed an unjust enrichment claim based on fraud when the court had granted summary judgment in the defendant's favor on the fraud claims. In the present case, the Court has not determined whether there was any "improper conduct" on the part of Triumph or the Third-Party Defendants. *See Martis v. Grinnel Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024-25, 329 Ill. Dec. 82, 905 N.E.2d 920 (Ill. App. Ct. 2009) (finding that unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct"). Ward's unjust enrichment claims, therefore, do not fail simply because the Court dismisses Counts II-IV.

Counter-Defendants' argument that Ward cannot assert unjust enrichment claims unless he has no adequate remedy at law is also misguided. (Mot. to Dismiss at 14-15.) For this proposition, Counter-Defendants' cite *Trujillo,* which, as Ward explains in his Response, incorrectly relied upon *HPI Health Care* because *HPI Health Care* finds that legal and equitable remedies underlie unjust enrichment. (Resp. at 14); *see also HPI*, 131 Ill.2d at 160. In their Reply, Counter-Defendants cite *Martinell v. Navistar Intern. Corp.*, No 11-c-8707, 2012 WL 2503964, at *6 (N.D. Ill. June 28, 2012), which also relies on *HPI Health Care* for this proposition. (Reply at 12.) "The correct Illinois rule appears to be a narrower one: unjust enrichment is unavailable where a specific contract governs the relationship of the parties." *In re*

*Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) (finding there is confusion about the "remedy at law" requirement in Illinois for an unjust enrichment cause of action) (citing *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006)). Counter-Defendants do not point to any specific contract that would undermine Ward's unjust enrichment claims.

The Court also disagrees with Defendants that Ward fails to state a claim for unjust enrichment against the Third-Party Defendants. Ward alleges that the "Third-Party Defendants removed from Ward monies and other property without authorization" and "unjustly retained the property to Ward's detriment, as he lost the benefit of the property." (Amend. Counter. ¶¶ 416-18.) Specifically, Ward alleges that Cecola had an agreement with the Third-Party Defendant companies to send them a check every month using Triumph's funds. (*Id.* ¶ 243-48; 292.) The companies then cut checks to the investors, who would receive the funds tax free. (*Id.*) As previously explained, the diverted funds would have flowed directly to Ward as one of two shareholders in Triumph, yet these funds improperly flowed to the Third-Party Defendants instead. The diverted funds, which the Third-Party Defendants retained, also decreased Triumph's EBIDTA, which prevented Ward from receiving additional contracted for compensation. (Amend. Counter. ¶¶ 232-38); *see also* (*Id.* ¶ 417 (alleging that Third-Party Defendants took and retained "funds and assets, including but not limited to bonus compensation and additional shares.").) Based on these allegations, Ward sufficiently states a claim for unjust enrichment in Count VI.

Ward also sufficiently alleges that Triumph unjustly retained a benefit to Ward's detriment. Specifically, Ward alleges that "Triumph received the benefit of unrealized income to the company that Ward never received" but was entitled to as one of the company's two

16

shareholders. (*Id*. at ¶¶ 425, 430.) Additionally, Triumph agreed to reimburse Ward for the tax liability he incurred, but retained those funds rather than fulfilling its obligation to Ward. (*Id*. at ¶¶ 423-28.) Count VII, therefore, "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

## CONCLUSION

For the reasons set forth above, the Court grants Triumph's and the Third-Party Defendants' motion to dismiss Counts II, III, IV and V with prejudice, but denies the motion as to Counts I, VI and VII..

**Date: October 29, 2012**

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**

17