**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRIUMPH PACKAGING GROUP, ) <br> an Illinois corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SCOTT WARD, et al., ) <br> ) <br> Defendants. ) <br> _____) <br> SCOTT WARD, ) <br> ) <br> Counter-Claimant and ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TCG PACKAGING SERVICES, LLC ) <br> d/b/a/ TRIUMPH PACKAGING GROUP, ) <br> et al., ) <br> Counterclaim and ) <br> Third-Party Defendants. ) | Case No. 11 C 7927 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On November 8, 2011, Plaintiff Triumph Packaging Group ("Triumph") filed a seven-count Complaint against Scott Ward ("Ward"), Vital-X Associates, LLC ("Vital-X"), and Creative Design Products, Inc. ("CDP"), alleging actual and threatened misappropriation of trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065, *et seq.* (Count I), a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count II), a common law breach of fiduciary duty claim (Count III), an Illinois tortious interference with prospective economic advantage claim (Count IV), an Illinois civil conspiracy claim (Count V),

a common law breach of contract claim (Count VI), and a common law conversion claim (Count VII) pursuant to the Court's original and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a). On December 3, 2013, the Court entered the parties' stipulation of dismissal as to Triumph's Illinois Trade Secrets Act claim alleged in Count I and its tortious interference with prospective economic advantage claim alleged in Count IV. Therefore, Triumph's remaining claims include its civil RICO claim in Count II and its state law claims in Counts III, V, VI and VII.

On July 27, 2012, Ward, as Counter-Claimant and Third-Party Plaintiff, filed a First Amended Counter-Claim and Third-Party Complaint against Triumph and Third-Party Defendants Randall Cecola ("Cecola"), DTG Services Group, Inc. ("DTG"), Kallahan Marketing Group, Inc. ("Kallahan"), Darwin Technology ("Darwin"), and Tesoro Realty Group, LLC ("Tesoro"). Specifically, Ward alleged a common law fraudulent inducement claim (Count I), a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count II), a common law breach of fiduciary duty claim (Count III), an Illinois civil conspiracy claim (Count IV), a common law conversion claim (Count V), and two common law unjust enrichment claims (Counts VI and VII) pursuant to the Court's original and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a). On October 29, 2012, the Court granted Triumph's and the Third-Party Defendants' motion to dismiss the First Amended Counterclaim and Third-Party Complaint as to Counts II, III, IV, and V and dismissed these counts with prejudice.[1] Therefore, Ward's remaining claims include his common law fraudulent inducement

---

[1] The Court presumes familiarity with its previous orders in this lawsuit, including the Court's denial of Triumph's motion for a preliminary injunction on December 2, 2011. (R. 47.)

claim as alleged in Count I and his two common law unjust enrichment claims as alleged in Counts VI and VII.

Before the Court are Triumph's motion for summary judgment, the Third-Party Defendants' motion for summary judgment, and Ward's motion for partial summary judgment all brought pursuant to Federal Rule of Civil Procedure 56(a). (R. 170, 172, & 176.) For the following reasons, the Court grants in part Ward's motion for partial summary judgment as to Triumph's civil RICO claim as alleged in Count II of Triumph's Complaint and dismisses Count II with prejudice. Because the Court is dismissing with prejudice the only claim in this lawsuit over which the Court has original jurisdiction, *see* 28 U.S.C. § 1331, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c). Therefore, the Court dismisses the state law claims alleged in Counts III, V, VI and VII of Triumph's Complaint and Counts II, VI and VII of Ward's First Amended Complaint without prejudice for lack of subject matter jurisdiction. Last, because the Court considered the parties' arguments regarding any alleged Local Rule 56.1 violations in the context of determining the relevant facts, the Court denies Ward's motions to strike as moot. (R. 190, 199, & 201.)

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which

3

the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632. It is well-established in this Circuit that "district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor,* 662 F.3d 880, 887 (7th Cir. 2011).

In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir.

4

2012). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

Triumph, a manufacturer of food product packaging, is an Illinois corporation with its principal place of business in Bolingbrook, Illinois. (R. 178, Ward's Rule 56.1 Stmt. Facts ¶¶ 1, 8.) Triumph has facilities in both Illinois and Georgia. (R. 175, Triumph-Third-Party Rule 56.1 Stmt. Facts ¶ 36.) Randall Cecola (Cecola") is the owner and Chief Executive Officer ("CEO") of Triumph. (*Id.* ¶ 2.) Ward is the former Chief Operating Officer ("COO") of Triumph. (Ward's Stmt. Facts ¶ 7.) Vital-X and CPD were Ward's companies of which he was the sole actor, owner, and representative. (*Id.* ¶¶ 4, 32.) Ward created Vital-X on February 16, 2010 and operated it until August 12, 2011 when the Illinois Secretary of State involuntarily dissolved it. (R. 183, Triumph-Third-Party Add'l Facts ¶ 1.) On June 2, 2011, Ward formed CDP and the parties do not dispute that the Illinois Secretary of State involuntarily dissolved it. (*Id.* ¶ 4; Ward's Stmt. Facts ¶ 4.) Mighty-Pac, Inc. ("Mighty-Pac") is a Palatine, Illinois business run by Mike Pastore. (Ward's Stmt. Facts ¶¶ 35, 36.) Silvestri Sweets, Inc. ("Silvestri Sweets") is a candy company based in Geneva, Illinois. (*Id.* ¶ 40; Triumph-Third-Party Stmt. Facts ¶ 40.)

As Triumph's COO, Ward ran Triumph's day-to-day operations. (Triumph-Third-Party Stmt. Facts ¶ 20; Ward's Stmt. Facts ¶ 56.) Triumph gave Ward considerable freedom and responsibility with respect to the management of Triumph and in his interactions with Triumph's customers, vendors, and other key business contacts. (Triumph-Third-Party Stmt. Facts ¶ 20.) At Triumph, Ward was also involved with sales, pricing, purchasing raw materials, production, manufacturing, marketing, and hiring and firing. (Ward's Stmt. Facts ¶ 57.) In addition to his responsibilities with respect to operations, Triumph tasked Ward with generating more business

5

for Triumph. (Triumph-Third-Party Stmt. Facts ¶ 21; R. 193, Ward's Add'l Stmt. Facts ¶ 22.) It is undisputed that Triumph fired Ward on September 20, 2011. Ward is currently the General Manager of AGI North America, LLC's ("AGI") Indianapolis, Indiana facility. (Ward's Stmt. Facts ¶ 10.) AGI, now known as ASG-Shorewood Group, produces paper and plastic packaging. (*Id.* ¶ 12.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed.R.Civ.P. 56(a)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

I.  **Triumph's Civil RICO Claim**

In his motion for partial summary judgment, Ward argues that Triumph has failed to present evidence creating a genuine dispute of material fact in regard to Triumph's civil RICO claim against Defendants Ward, Vital-X, and CPD, and thus the Court should dismiss Triumph's civil RICO claim as a matter of law. *See* 18 U.S.C. §§ 1962(c), 1964(c). "Congress passed RICO in an effort to combat organized, long-term criminal activity." *Jennings v. Auto Meter Prods., Inc.,* 495 F.3d 466, 472 (7th Cir. 2007). To that end, "RICO makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" *Boyle v. United States,* 556 U.S. 938, 944, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009) (quoting 18 U.S.C. § 1962(c)). To establish a civil violation of Section 1962(c), a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496–97, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see also Rao v. BP Prods. N. Am., Inc.,* 589 F.3d 389, 399 (7th Cir. 2009). The Court turns to whether Triumph has presented evidence creating a genuine issue of material fact for trial regarding whether there was a "pattern" of racketeering activity because it is dispositive. *See Williams v. Aztar Ind. Gaming Corp.,* 351 F.3d 294, 298 (7th Cir. 2003) ("The viability of [plaintiff's] RICO claim turns on whether he has established a pattern of racketeering activity, which is an essential element of a claim under the RICO statute."); *Pizzo v. Bekin Van Lines Co.,* 258 F.3d 629, 633 (7th Cir. 2001) ("The requirement of proving 'pattern' is central to the

statute.").

"A pattern of racketeering activity consists, at the very least, of two predicate acts of racketeering committed within a ten-year period." *Jennings,* 495 F.3d at 472; *see also H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) ("while two acts are necessary they may not be sufficient.") (citation omitted). "'Racketeering activity' is limited to the specific acts statutorily enumerated in 18 U.S.C. § 1961(1)." *DeGuelle v. Camilli,* 664 F.3d 192, 199 (7th Cir. 2011). These acts include mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and transporting stolen goods in interstate commerce in violation of 18 U.S.C. § 2314, among other indictable acts. *See id*; *Williams,* 351 F.3d at 298; 18 U.S.C. § 1961(1).

"[T]o show a pattern of racketeering activity, a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity." *DeGuelle,* 664 F.3d at 199; *see also Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.,* 424 F.3d 659, 672 (7th Cir. 2005). "A relationship is established if the criminal acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *DeGuelle,* 664 F.3d at 199 (citation omitted). "[T]he continuity requirement exists to give effect to Congress's clear intention that RICO target long-term criminal behavior." *Jennings,* 495 F.3d at 473. "'Continuity' is both a closed- and open-ended concept." *H.J. Inc.*, 492 U.S. at 241. "Closed-ended continuity refers to criminal behavior that has ended but 'the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future.'" *DeGuelle,* 664 F.3d at 199 (citation omitted). "[O]pen-ended continuity requires a showing of past conduct that 'by its

8

nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J.*, 492 U.S. at 241).

Assuming for purposes of Ward's motion for partial summary judgment that Triumph has presented sufficient evidence satisfying the relationship requirement for a "pattern" of racketeering, the parties dispute whether Triumph has set forth evidence establishing a genuine factual dispute for trial regarding the continuity requirement. More specifically, Triumph maintains that it has presented evidence that the actions of the alleged enterprise, involving Ward, Vital-X, and CDP, as well as Silvestri Sweets and Mighty-Pac, occurred over a period of 22 months, which Triumph argues satisfies the time period requirement for closed-ended continuity. "In order to demonstrate a pattern over a closed period, a RICO plaintiff must 'prov[e] a series of related predicates extending over a *substantial period of time*.'" *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 779 (7th Cir. 1994) (emphasis added) (quoting *H.J.,* 492 U.S. at 242). Although the Seventh Circuit has "not employed a bright-line rule for how long a closed period must be to satisfy continuity," it has not "hesitated to find that closed periods of several months to several years did not qualify as 'substantial' enough to satisfy continuity." *Roger Whitmore's Auto. Servs.*, 424 F.3d at 673. In determining whether there is continuity, the Court considers the following factors: "(1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes, and (4) the occurrence of distinct injuries." *Id.* (citing *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986)). The Court's analysis of "the continuity prong is fact-specific and undertaken with the goal of achieving a 'natural and commonsense' result, consistent with Congress's concern with long-term criminal conduct." *Roger Whitmore's Auto. Servs.,* 424 F.3d at 673 (citation omitted); *see also Hartz v. Friedman,* 919 F.2d 469, 472

9

(7th Cir. 1990) ("The pattern requirement is difficult to define and requires courts to use common sense.").

In response to Ward's motion, Triumph argues that starting in November 2009, Ward utilized his two pre-existing business entities Vital-X and CPD in agreement with two other companies, Mighty-Pac and Silvestri Sweets, to funnel money away from Triumph for Ward's own benefit. Triumph specifically argues that Ward, acting in concert with his two separate corporate entities and these non-parties, accepted kickbacks from Triumph's customers and suppliers and entered into an agreement with a former Triumph customer, Silvestri Sweets, in which he ran secret packaging orders using Triumph's facilities, equipment, and employees.

Viewing the facts and all reasonable inferences in Triumph's favor, as the Court is required to do at this procedural process, Triumph sets forth evidence that Ward received kickbacks from companies, such as Forest Packaging Company, starting in November 2009 and that these kickbacks were for payments of goods and services that Triumph provided. (Triumph-Third-Party Stmt. Facts ¶¶ 32, 33.) Ward, for example, required a kickback from an equipment supplier, Delta Machine Service, Inc., in June or July 2011, by demanding that Delta Machine increase the prices it charged Triumph for equipment and then pay Ward a kickback on the difference. (*Id*. ¶ 37; Triumph-Third-Party Stmt. Add'l Facts ¶ 9.) These kickbacks to Ward were routed through Michael Pastore and his company Mighty-Pac or through Vital-X. (Triumph-Third-Party Stmt. Facts ¶ 34; Triumph-Third-Party Add'l Facts ¶ 7.) Triumph also asserts that Ward never disclosed these kickbacks, or as Ward called them "commissions," to Triumph. (Triumph-Third-Party Stmt. Facts ¶ 35.) Further, Triumph contends that Vital-X funneled kickbacks to Ward, although Triumph does not set forth the time period of these

kickbacks. (*Id.* ¶ 36.)

In addition, in January 2011, Ward offered Triumph's goods and services to Silvestri Sweets for his own personal gain. (*Id.* ¶ 41.) Specifically, Triumph maintains that in 2011, Ward manufactured packaging for Silvestri Sweets by using Triumph's resources, equipment, and employees. (*Id*. ¶ 43.) In March 2011, for example, Ward shipped twelve pallets of Triumph-produced boxes from Triumph's Georgia location to Silvestri Sweets in Illinois. (Triumph-Third-Party Add'l Facts ¶ 8.) Triumph further asserts that on at least two occasions materials and paper necessary to complete Ward's scheme were shipped between Triumph's Georgia and Illinois facilities and required use of Triumph's employees. (*Id*. ¶¶ 11, 12.) In June or July 2011, Ward, through Vital-X, quoted to Silvestri Sweets another project that Triumph would complete by using Triumph's resources in Georgia. (*Id*. ¶ 9; Triumph-Third-Party Stmt. Facts ¶ 45.) Furthermore, Ward used Triumph's resources to design and produce additional packaging for Silvestri Sweets in August 2011. (Triumph-Third-Party Stmt. Facts ¶ 46.) In total, Ward designed and ran four "secret" packaging runs through Triumph's facilities causing Triumph at least $147,086.40 in damages. (*Id*. ¶ 47; Triumph-Third-Party Add'l Facts ¶¶ 6, 13.)[2]

Construing these facts and all reasonable inferences in Triumph's favor for purposes of Ward's motion for partial summary judgment, Triumph has not supplied sufficient evidence to

---

[2] The Court disregards the additional facts Triumph and the Third-Party Defendants have set forth in their Local Rule 56.1(b) Response to Ward's Local Rule 56.1(a) Statement of Facts (R. 183) and Response to Ward's Local Rule 56.1(b) Statement of Additional Facts (R. 193) as failing to comply with the local rules. *See Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). Under Local Rule 56.1, Triumph and the Third-Party Defendants were required to respond to the Ward's proposed findings paragraph by paragraph and put their own proposed findings of fact in a separate document. *See id.*; *Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2009); *Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 809 (7th Cir. 2005).

satisfy the closed-ended continuity requirement under the multi-factor *Morgan* test. *See Roger Whitmore's Auto. Servs.,* 424 F.3d at 673; *Morgan,* 804 F.2d at 975. First, according to Triumph, the time period of the "pattern" of racketeering started in November 2009 — although it is undisputed that neither Vital-X or CDP were in existence in November 2009. In any event, the time period ended in September 2011, which is 22 months, and the Seventh Circuit has concluded that closed periods of several months to several years do not necessarily qualify as "substantial" enough to satisfy continuity. *See id.*[3] (citing *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (collecting cases)); *see, e.g., Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 663 (7th Cir. 1992) (scheme lasting a "period of years" did not satisfy closed-ended continuity). In *Roger Whitmore's Auto. Servs.*, for example, the time period was "at most about two years." *Id.* at 673. As such, the time period of 22 months weighs against finding close-ended continuity, especially in light of the other relevant *Morgan* factors discussed immediately below. *See Jennings,* 495 F.3d at 473-74 ("The duration of the alleged racketeering activity is 'perhaps the most important element of RICO continuity.'") (quoting *Roger Whitmore's Auto. Servs.,* 424 F.3d at 673).

---

[3] Triumph relies on one of the district court's decisions in *Roger Whitemore's Auto Servs.* for the proposition that 28 months is a substantial amount of time. *See Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, No. 99 C 2504, 2002 WL 959587, at *4 (N.D. Ill. May 9, 2002). Not only was the district court's May 9, 2002 decision in the context of a motion to dismiss pursuant to Rule 12(b)(6), but after plaintiffs appealed the district court's grant of defendants' summary judgment motion, the Seventh Circuit clearly articulated that "[a]lthough we have not employed a bright-line rule for how long a closed period must be to satisfy continuity, we have not hesitated to find that closed periods of several months to several years did not qualify as 'substantial' enough to satisfy continuity." *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.,*424 F.3d 659, 672 (7th Cir. 2005). As such, Triumph's reliance on the district court's decision is misplaced.

As to the *Morgan* factor regarding the number of victims, Triumph admits that it is the only victim of Ward's alleged scheme when it argues that "Ward conducted a pattern of racketeering activity to defraud Triumph out of hundreds of thousands of dollars" and that the allege scheme involved "the same victim (Triumph)." (R. 184, Resp. Mem., at 6-7.) The fact that there was only one victim further weighs against Triumph's argument that it has established closed-ended continuity. *See Roger Whitmore's Auto. Servs.,* 424 F.3d at 673-74. Furthermore, "[t]here is no indication that the defendants engaged in any other racketeering scheme before or after that closed period." *Id.* at 674.

The number and variety of predicate acts is also lacking, especially due to the fact that "mail and wire fraud allegations are unique among predicate acts because the multiplicity of such acts may be no indication of the requisite continuity of the underlying fraudulent activity." *Midwest Grinding Co.,* 976 F.2d at 1024 (internal quotations omitted, citation omitted); *see also Vicom,* 20 F.3d at 781. Nevertheless, Triumph also argues that the predicate acts included transporting stolen goods in interstate commerce, 18 U.S.C. § 2314, specifically two shipments between Georgia and Illinois in relation to the "secret" production jobs for Silvestri Sweets. These two predicate acts — along with the mail and wire fraud allegations — comprise a fairly small number of predicate acts weighing against a showing of closed-ended continuity, "particularly when a large proportion of the acts involved wire or mail fraud, neither of which are favored means of establishing a RICO pattern in this circuit." *Roger Whitmore's Auto. Servs.,* 424 F.3d at 673; *see also Meier v. Musburger,* 588 F.Supp.2d 883, 900 (N.D. Ill. 2008) (Although RICO "defines a pattern of racketeering activity as consisting of at least two predicate acts of racketeering committed within a ten-year period, two of anything seldom make out a

13

pattern.") (internal citations omitted).

Next, the Court looks to the *Morgan* factors of whether Ward's alleged misconduct comprised separate schemes and the schemes' distinct injuries. *See Roger Whitmore's Auto. Servs.,* 424 F.3d at 673-74; *see also Vicom,* 20 F.3d at 782 ("the number of schemes is still relevant as to whether continuity exists."). Construing Triumph's evidence in its favor, there were two separate schemes, at best. Specifically, Triumph argues that Ward, acting in concert with his two separate corporate entities and non-parties Mighty-Pac and Silvestri Sweets, (1) accepted kickbacks from Triumph's customers and suppliers, and (2) entered into an agreement with a former Triumph customer, Silvestri Sweets, to run secret packaging orders using Triumph's facilities, equipment, and employees. Although a RICO pattern may be premised on one or two schemes, Ward's alleged misconduct lasted approximately 22 months and involved only one victim, a handful of predicate acts, and just two distinct injuries of approximately $57,500 from the kickback scheme and $150,000 in relation to the "secret" packaging runs. (Triumph-Third-Party Stmt. Facts ¶ 36, 47.) Under these circumstances, using a "natural and commonsense" approach, the Court would be hard-pressed to concluded that Triumph has established the continuity requirement to show a "pattern" of racketeering activity. *See Roger Whitmore's Auto. Servs.,* 424 F.3d at 673; *see also H.J.,* 492 U.S. at 239 ("A pattern is not formed by 'sporadic activity.'") (citation omitted). Indeed, as the Seventh Circuit teaches, "[a]lthough § 1964(c) provides a private civil action to recover treble damages for violations of RICO's substantive provisions, the statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings,* 495 F.3d at 472.

It is well-established that Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322. As the Supreme Court further explains, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (citation omitted). Here, Triumph has failed to present evidence raising a genuine issue of material fact for trial that Ward's conduct — in conjunction with CDP, Vital-X, Silvestri Sweets, and Mighty Pac — exhibited a "pattern" of racketeering. Accordingly, the Court grants Ward's motion for partial summary judgment as to Triumph's civil RICO claim alleged in Count II of Triumph's Complaint and dismisses Count II with prejudice.

## II. The Parties' State Law Claims

The parties' remaining claims are pursuant to state law and include Counts III, V, VI and VII of Triumph's Complaint and Counts II, VI and VII of Ward's First Amended Complaint. Because the Court is dismissing, with prejudice, Triumph's claim over which the Court has original jurisdiction, namely, the civil RICO claim pursuant to 18 U.S.C. § 1962(c) as alleged in Count II of Triumph's Complaint, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c).

As the Seventh Circuit teaches, "[t]he supplemental-jurisdiction statute provides that the district court 'may decline to exercise supplemental jurisdiction" over state-law claims if the court 'has dismissed all claims over which it has original jurisdiction.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012) (quoting 28 U.S.C. § 1367(c)(3)); *see*

15

*also Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 941 (7th Cir. 2012) ("Generally, when a court has dismissed all the federal claims in a lawsuit before trial, it should relinquish jurisdiction over supplemental state law claims rather than resolve them on the merits."). Although the decision to relinquish supplemental jurisdiction is within the district court's broad discretion, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co.,* 672 F.3d at 479 (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir. 2010)). Under this well-established precedent, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses Triumph's claims as alleged in Counts III, V, VI and VII of Triumph's Complaint and Counts II, VI and VII of Ward's First Amended Complaint without prejudice.

## CONCLUSION

For the reasons set forth above, the Court grants in part Ward's motion for partial summary judgment as to Count II of Triumph's Complaint and dismisses Count II with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses without prejudice Counts III, V, VI and VII of Triumph's Complaint and Counts II, VI and VII of Ward's First Amended Complaint for lack of subject matter jurisdiction. The Court denies Ward's motions to strike as moot.

**Dated:** March 11, 2014

                                      **ENTERED**

                                      _____
                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**